JonssoN, J.
The defendant in error, Emma G. Garrison, formerly Emma Grogan, filed her petition for dower, stating therein that she was the widow of one William Grogan, who, during coverture, was seized of certain lands, out of which she asks an assignment of her dower as provided by law.
The property is described as being lot No. 9, etc., fronting on Fifth street, Cincinnati, twenty-five feet, and also the southwest part of lot No. 10, etc., also fronting ten feet, on Fifth street, each one hundred and sixteen feet deep, making thirty-five feet front by one hundred and sixteen feet in depth.
Wm. H. Grogan, a minor, and the only son of the deceased, by a former marriage, and John Parker, administrator of Wm. Grogan, are made defendants.
Wm. H. Grogan, by his guardian, filed an amended answer, setting up as a bar to this action, an antenuptial contract, a copy of which, by order of the court, is made part of the answer.
To this, the petitioner demurs, on the ground that said amended answer does not state facts sufficient to constitute a defense.
Upon the issue thus made, the case was reserved for hearing to the general term, where it was held that the matters set up as a bar were insufficient, and decreed that the petitioner was entitled to dower.
This action is brought to reverse that judgment.
By the record, it appears that the case came on for hearing at the general term, on the petition, amended answer, and demurrer thereto, upon the questions presented by the pleadings.
The court, without directly passing on the demurrer, virtually does so by special findings of the truth of the facts stated in the petition ; also that the defendant is in possession of the premises described in the petition, claiming the *56 estate of the plaintiff therein, and that the plaintiff' had notified him of her claim, and requested that her dower be assigned, which he refused to do. It is then adjudged that she be endowed of one equal third part of the lands in the petition described.
The court then proceeds to find that as, by certain proceedings in the Prob.ate Court of said county, the plaintiff’s dower interest in said premises “ has been set off in dollars and cents,- all proceedings therefore to set off' the same by metes and bounds, by virtue of any order of this court, is waived by the parties hereto.”.
Upon this finding, it is ordered “ that the plaintiff receive her dower in money, as set off to her in said Probate Court, and that defendant pay the costs,” etc.
No mention is made of the demurrer; but the findings ^nd judgment that she was entitled to dower was, in effect, sustaining it.
It is a little difficult to understand these two orders — the one that she is entitled to dower in one equal third part of the premises, and the other that the land had been sold in another court, and dower in money already assigned; in which last proceeding she had waived her right to the relief sought in this action.
Assuming, however, that the record is defective upon this point, we proceed to an examination of the errors complained of.
The errors assigned are:
1. The court erred in holding that the amended answer did not constitute a statutory jointure in bar.
2. In holding said answer did not amount to an equitable bar.
8. In holding that the petitioner was not estopped by reason of the facts stated in said answer.
4. In holding that the burden of proof was on the defendant to show that said antenuptial contract was reasonable.
As to this last assignment, it is sufficient to say that there is nothing of record to show that the court did so hold. *57 The demurrer having been virtually sustained, though, not formally, there remained no defense to the action.
The defendant being a minor, it became the duty of the court to be satisfied of the truth of the petition, before rendering a judgment. The record shows the facts specially found, but no such holding as is complained of appears.
The remaining errors assigned make it necessary to give a full synopsis of the defense.
The amended answer, with the antenuptial contract which it sets up, states that previous to Eebruary 23, 1867, there was a treaty between the plaintiff and said ’William Grogan, concerning marriage between them; that she was of full age, and under no restraint; that he was many years her senior, and of feeble health, and was the owner of the premises described in the petition, and a small amount of personalty; that he had one child, the defendant, by a former wife; and that the terms of an adjustment of the rights of the plaintiff, in the event of their marriage and her survivorship, were freely discussed and agreed on.
lie agreed to enter into said marriage only on the condition that she would hind herself to accept, in the event of his death — an event then anticipated as not, likely, very remote — a certain interest in his estate, in-full satisfaction of her claims as his widow; and on the 23d of Eebruary, 1867, she freely and voluntarily entered into a written agreement to that effect, which was duly executed and acknowledged by both parties, whereby it was stipulated that said Grogan, in consideration of said marriage about to take place with plaintiff', whose name was then Emma Mitchell, did thereby grant, bargain, sell, and convey to her, during her natural life, real estate in Cincinnati, described as follows:
“All that lot of land, situate in said city, and being the one undivided one-third part of the southwest part of lot No. ten [10], in Ewing’s subdivision, fronting ten [10] feet on Fifth street, and running back on Kilgour street, on lines parallel with said street last named, one hundred and sixteen feet, nine inches [116|- feet], said lot hereby conveyed *58 being part of ground purchased by said city for the purpose of extending Kilgour street.”
It is averred that this land so conveyed was in full satisfaction of her dower.
The parties were married February 24, 1867, and he died in August thereafter.
The answer concludes: “ Wherefore, he denies that said petitioner is entitled to dower, as claimed in the petition, and asserts that adequate provision was made for her by the aforesaid jointure, and prays that her claim may be restricted to the premises set forth in the contract.”
The prayer that her claim, which was to have dower in this ten feet as well as in the twenty-five feet in lot No. 9 adjoining, be restricted to the premises just described — that is, to the ten feet — would seem to imply that the pleader understood this contract as embracing a life estate in the undivided one-third of ten feet front by one hundred and sixteen feet deep, though, in argument, it is insisted that this description embraced all of the ten feet front, and not an undivided one-third. We do not so understand it.
The will of deceased is printed as part of the record.
There is no statement of facts showing the extent and value of Wm. Grogan’s property at the date of the marriage, nor the value of the part conveyed, nor of that remaining, to enable the court to say whether it was adequate or not.
There is no averment that the deed was ever delivered to her, or that she, either during or after coverture, ever had possession; on the contrary, the court finds, as one of the reasons doubtless for sustaining the demurrer, that the premises are in the possession of the defendant; and still more, that, by proceedings in the Probate Court, instituted, as they must have been, by the defendants, or one of them, the property had been sold and converted into money.
We mention this as accounting for the absence of such important averments in this defense.
Grogan died in August, 1867, and this petition was filed in 1870, and .the presumption is that, during the interval, *59 this real estate, now set up as a jointure, was held and controlled by the heir, and, for aught that appears, she declined to accept the provision thus made. Was she bound to accept it ?
The petitioner declined to take under the will.
The will refers to this antenuptial contract, and declares that “ she shall not have any dower in my real estate described in the contract; . . . that is to say, that said Emma Grogan shall have no dower in the real estate mentioned and described in said contract”
Let us inquire:
1. Was this antenuptial contract a legal bar to an action for dower ?
If it was, then this action was improperly-brought. The statute of Ohio, on this subject, reads :
“ Sec. 2. If any estate shall be conveyed to a woman as jointure, in lieu of her dower, to take effect immediately after the death of her husband,, and to continue during her life, such conveyance shall bar her right of dower.
“ See. 4. That when any conveyance, intended to be in lieu of dower, shall, through any defect, fail to be a legal bar thereto, and the widow, availing herself of such defects, shall demand her dower, the estate and interest conveyed to such widow with intention to bar her dower, shall thereupon cease and determine.”
What, then, is a jointure, under this statute ?
It is a word having a fixed legal signification, long prior to the enactment of our dower act.
The section quoted is, in fact, hut the adoption of a similar provision, found in Stat. 27 Henry YIII, c. 1056, which enacted that where lands are settled to the use of the wife, “ that then, in every such case, every woman having such jointure . . . shall not have title to any dower in the residue.”
This act of parliament was enacted to prevent a woman from having both dower and jointure.
Before its passage, accepting a jointure was not a bar to her action for dower.
*60 Under this statute, the word jointure had as definite and well-defined legal meaning as any other legal term.
It was an estate made to the wife in satisfaction of dower. Sir Edward Coke says “ that to the making of a perfect jointure, within that statute, six things are to be observed:
“ 1. It is to take effect for her life, in possession or profit, presently after the death of the husband.
“ 2. It must be for her own life, or for a greater estate.
“ 3. It must be made to herself, and to no other for her.
“ 4. It must be made in satisfaction of her whole dower, and not of part of her dower.
“ 5. It must be expressed or averred to be in satisfaction of her dower.
“ 6. It may be made either before or after marriage.”
He adds: “ So as to comprehend all in a few words : A jointure . . is a competent livelihood of freehold for the wife, of lands or tenements, to take effect presently in possession or profit after decease of the husband; now, as dower ad ostium ecdesice, or ex assensu patris, is better for the wife, because, in respect to certainty, she may enter, than dower at common law where she is driven to her action, and therefore Britton calleth dower ad ostium ecdesice and ex assensu patris, establishment of dower by the husband, and assignment of dower after his decease (for nothing that is uncertain is established); so jointure (that hath the force of a bar of dower by said act of 27 Henry VIII), is, as hath been said, more secure and safe for the wife than dower ad ostium ecdesice or ex assensu patris, for besides it is as certain as these others, and she may enter into it, after the death of her husband, and not be driven to her action.” Coke on Lit., sec. 41, note 8.
A jointure with all these qualities is binding on the widow, and a complete bar to her claim. 1 Cruise Digest, title 7, chap. 1, sec. 19.
But it had to be as certain as dower ad ostium ecdesice or ex assensu patris, and to be better than these ; and, as Coke says, more secure and safe for the wife than either of these,' or than dower at common law. It had to be established, *61 so the wife could enter, after the death of her husband, and not be driven to her action.
It is said jointure is to be as certain as dower ad ostium ecclesice or ex assensu patris. How certain were they ?
Coke says : “ Dowment ad ostium ecclesice is where a man of full age, seized in fee-simple, who shall be married to a woman, and when he cometh to the church-door to be married, then after affiance and troth plighted between them, he endoweth the woman of his whole land- or the half or other lesser part thereof, and then openly doth declare the quantity and the certainty of the land which she shall have for her dower. Here be two things that the law doth delight in, viz: To have this and the like openly done; second, to have certainty, which is the mother of quiet and repose, and this word (moiety), above said to be intended of the half in certainty, and not of the moiety in common, which clearly appeareth in that here Littleton saith the quantity and certainty of the land.” Coke on Lit., title Dower, sec. 39.
So dower ex assensu patris must have the same quality of certainty. It must be “ of parcels of his father’s lands or tenements with the assent of his father, who after assigns the quantity and parcels. In this case, after death of the son, the wife shall enter into the same parcel, without the assignment of any.” Coke Lit., title Dower, sec. 40.
Jointure was as certain as dower ad ostium ecclesice of ex assensu patris. It was more secure and safe than either of these. It was, like them, an establishment of dower by the husband, and better than either of these, she might enter into it, after the death of her husband, and not be driven to her action. This was doubtless for the reason that it was evidenced by a conveyance in writing.
In Vernon's case, 4 Coke, 1, the leading one on the subject, it is said, “ that dower ad ostium ecclesice and ex assensu patris concluded the wife of her dower, if she entered into the land so assigned to her, after the death of her husband, for these being in such form as the law requires to be dowers in law, an assignment of dower, when the bus- *62 band was sole seized, can not be made of tbe third or fourth part in common, but ought to be in severalty.” 1 Thomas’ Coke, 597.
At common law it was imperative as a requisite of dower that the husband should be sole seized.
Upon estates held in joint tenancy no dower would attach. Lit., see. 45 ; 1 Scribner on Dower, 257.
So stringent was this rule, that where one joint tenant aliened Ms share, destroying the possibility of survivorship and severing the tenancy, the widow of the alienor could not claim dower. 4 Kent, 87; Coke Lit., see. 816.
The reason for this rule is obvious, and applies with equal force to a jointure.
The sole seizin of the husband was indispensable, because only in such case could dower be assigned by metes and bounds, and as jointure was in lieu of dower, the same qualities as to the estate granted necessarily existed.
' It must be so assigned as to be held in severalty without an action at law.
By the terms of our statute jointure must be an estate, conveyed as jointure.
If from any defect it fail to be a legal bar to dower, and the widow elects to take advantage of this defect, and demands her dower, the estate conveyed as jointure shall cease and determine.
In what sense, then, is this word jointure used t It was a term which, for more than two hundred years, had had a fixed legal signification. Long prior to the adoption of the act of 27 Henry VIII, jointures were in common use, and their meaning well undei’stood.
That statute, from which ours is almost literally borrowed, has been carefully considered in many reported cases by the most profound jurists of England. The repeated discussions, and the long line of decisions, growing out of this act, and similar ones in most of the states of the Union, were doubtless familiar to our ancestors, who incorporated a like provision in the statutes of Ohio. They were men *63 well versed in the common law, and especially that part relating to real estate.
It is well established as a rule of interpretation, that where particular words or phrases have in law an acquired, fixed legal signification, and are thus incorporated into a statute, the legal presumption is that the legislature meant to use them in this legal sense. Turney v. Yeoman, 14 Ohio, 207.
Where a statute speaks of a deed, it must be taken in its technical sense, as understood at common law — that is, a writing sealed and delivered by the parties. Moore’s Lessee v. Vance, 1 Ohio, 10.
So, also, where the word mortgage is used, it will be assumed that it is used in its ordinary legal signification, as well understood at common law, and that the legal liabilities incident to it were understood to follow. Per Scott, J., Medical College v. Zeigler, 17 Ohio St. 52.
Guided by this rule of interpretation, and by the light of the authorities and decisions referred to, we are led to conclude that the estate to be conveyed as jointure must possess those prime requisites enumerated by Littleton and Ooke, which we have quoted — that there must be such an estate as the widow can enjoy in severalty. It must declare the “ quantity and certainty ” of the lands she shall have — the “ two things that the law doth delight in ”— first, to have it done under our statute, by a solemn deed of conveyance; and, second, to have “ in certainty, which is the mother of quite and repose.” And Lord Ooke adds, speaking of certainty in dower at the church-door, and commenting on Littleton’s text: “ This word moiety means a half in certainty, not of moiety in common.”
In Winch’s Oases, p. 33 (London, 1657), it is said, to be a good jointure, a wife must have a sole estate, after the death of her husband.
In the case at bar, the conveyance is fatally defective in this prime quality of certainty.
It conveys an undivided one-third for life. The widow can not enter and enjoy in severalty; she would be driven *64 to hex’ action at law to have it assigned and set apai’t to hei’.
One of the prime reasons for making a jointure was to give the wife the right, without her action, to enter and be sole possessor.
Again, to constitute a good conveyance of an estate, the deed must not only be duly executed, but it must be delivered.
"We therefore hold that this antenuptial contract, for the reasons stated, is not a good statutory bar.
H. The next inquiry is, was it good as an equitable jointure ?
"What constitutes an equitable bar is a question fruitful in decisions.
Much learning and many conflicting decisions can be found in the books.
The substance of all the decided cases is that any provision made before marriage, whether of lands and tenements, goods and chattels, or whatever description of property, that constitutes a valuable consideration, if fair, reasonable,' and just, as between the parties, in view of all the circumstances of the case, at the time the contract was made, will, in equity, be supported as a good equitable jointure. Miller's Ex’r v. Miller, 16 Ohio St. 532; 2 Scrib. on Dower, 385-401.
Each case must be determined on its own particular facts and equities.
Looking at all the facts disclosed by this answer, and the absence of averments, we have arrived at the conclusion that this contract is not, in equity, a bar.
It conveys less than one-tenth of the real estate; no value is stated; it was only for life, in less than one-third of the whole; nothing was ever done to put her in possession; no acceptance by her, or part performance; and no facts stated to show that it was fair, reasonable, or just to her.
It has been an axiom, accepted for ages, that dower was to be favored; that no widow should be barred of that ancient and cherished right, unless—
*65 1. There was settled upon her, in strict conformity to law, an estate, as jointure, possessing all those requisites already pointed out; or,
2. There were such adequate provisions made, in lieu of dower, as, under all the circumstances, was fair, reasonable, and just.
III. As to estoppel. Neither do we think the petitioner estopped. She has done no act during or since coverture, that amounts to an estoppel.
Her antenuptial covenant to accept this conveyance in lieu of dower can not have the effect to release her dower.
In the case of Hastings v. Dickinson, 7 Mass. 155, the court says: “ This leads us to the second ground, viz., that the demandant’s covenant ought to have the effect of a release of dower. But this effect can not be admitted on any correct legal principle. It is true that a covenant never to prosecute an existing demand shall operate as a release to avoid circuity of action. But a release of a future demand not then in existence is void. Now in this case, the settlement being executed before marriage, the demand of dower had no existence, the same being inchoate.”
In the case of Vance v. Vance, 8 Shepley (Maine), 364, the court say : “ There can be no estoppel by executory covenants not to claim a right which is first to accrue afterward. The covenants of the wife with the husband before marriage, that she will not claim dower in his estate can not operate by way of release, estoppel, or rebutter to bar her of her dower.”
The judgment of the Superior Court is therefore affirmed.
Scott, Chief Judge, Day, Whitman and Wright, JJ., concurred.